SO ORDERED: October 22, 2012.



Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JAMES LEROY INGLIS ) | CASE NO. 12-4842-AJM-13 |
| CAROL LOUISE INGLIS ) | |

**ORDER (1) SUSTAINING CREDITOR'S OBJECTION TO CONFIRMATION OF PLAN AND (2) DIRECTING DEBTORS TO FILE AMENDED PLAN WITHIN 21 DAYS**

This matter came before the Court on September 18, 2012 upon the objection filed by Flagstar Bank, FSB, ("Flagstar") to confirmation of the Debtors' chapter 13 plan. The Court took ruling on the matter under advisement at the conclusion of the hearing and instructed counsel for the Debtors to submit case law in support of their position within fourteen (14) days. The Debtors and Flagstar submitted their case authorities on October 3, 2012 and October 5, 2012 respectively. For the reasons stated below, the Court sustains the objection and orders the Debtors to file an amended chapter 13 plan with terms consistent with this Order within twenty one (21) days of the date of this Order.

*Background*

The Debtors filed this chapter 13 case on April 25, 2012 (the "Petition Date"). The Debtors scheduled Flagstar as a secured creditor, holding a first mortgage in the Debtors' residence located at 1708 East 47th Street, Anderson Indiana ("the Residence"). The Debtors' chapter 13 plan ("the Plan") also filed on the Petition Date, provides in the "miscellaneous provisions" section to pay the fair market value of Residence ($55,000) at 4.5% interest to Flagstar on its first mortgage. Once these payments are completed, the Plan provides that Flagstar is to release its mortgage on the Residence.

Flagstar has objected to confirmation because it impermissibly "crams down" Flagstar's secured claim to fair market value which is prohibited by §1322(b)(2) when the claim sought to be crammed down is "secured only by a security interest in real property that is the debtor's principal residence...". There is no dispute that Flagstar has a valid mortgage on the Residence and that the Residence is the Debtors' principal residence. There is no dispute that the balance owed on the Residence far exceeds $55,000. Flagstar alleges in its objection that the Debtors are $55,787.33 in arrears on their mortgage alone. Flagstar filed a proof of secured claim in the amount of $146,107.97.

The Debtors introduced no exhibits at the September 18th hearing, but the Court has taken judicial notice of Flagstar's proof of claim to which a copy of the mortgage is

2

attached as an exhibit.[1]   Paragraph 2 of the Mortgage entitled "Monthly Payment of Taxes, Insurance and Other Charges" provides, in part, that the Debtors are to include, along with their monthly payment, sums for taxes and insurance premiums.  These sums paid for taxes and insurance premiums are referred to as "Escrow Funds". Paragraph 2 provides that "[t]he Escrow Funds are pledged as additional security for all sums secured by this Security Instrument".  The Debtors maintain that Flagstar's "security interest" in the Escrow Funds takes Flagstar's claim out of the antibifurcation protections of §1322(b)(2), which, in turn, allows the Debtors to cram down Flagstar's secured claim under §506.

## *Discussion*

Subject to provisions that are not in dispute here, Section 1322(b)(2) provides that a chapter 13 plan may

> (2)    modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property, that is the debtor's principal residence...

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), applicable to bankruptcy cases filed on or after October 17, 2005, added §101(13A), which was subsequently amended by the Bankruptcy Technical Corrections Act of 2010, Pub. L. 111-327, 124 Stat. 3557 (December 22, 2010).  Section 101(13A) defines "debtor's principal residence" and currently provides in part:

---

[1] The Mortgage is in favor of "First Option Mortgage".  The mortgage and all obligations and rights under it have been assigned in that Flagstar is now the holder of the mortgage.  Whether Flagstar is the true party in interest or whether it has standing to object to the Plan is not at issue.

3

    (13A)  The term "debtor's principal residence" -

        (A)    means a residential structure, if used as the principal residence by the debtor, including *incidental property*, without regard to whether the structure is attached to real property...

BAPCPA also added §101(27B) which defines "incidental property":

    (27B)  The term "incidental property" means, with respect to a debtor's principal residence -

        (A)    property commonly conveyed with a principal residence in the area where the real property is located;

        (B)    all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, *escrow funds*, or insurance proceeds; and

        (C)    all replacements or additions

(emphasis added). Thus, under the express terms of these provisions added by BAPCPA, it appears that a lender does not lose its §1322(b)(2) protection by taking a security interest in escrow funds as "escrow funds" are part of the "incidental property" which comprises "the debtor's principal residence".

    At least three bankruptcy courts, all from North Carolina, have disagreed with this analysis, all on the basis that an "escrow account" is not real property under North Carolina law. See, *In re Bradsher*, 427 B.R. 386, 391-391 (Bankr. M.D.N.C. 2010); *In re Martin*, 444 B.R. 538, 544 (Bankr. M. D. N.C. 2011); *In re Murray*, 2011 WL 5909638

(Bkrtcy, E. D. N.C.). ² These cases acknowledge the added BAPCPA provisions concerning "debtor's principal residence", "incidental property" and "escrow funds", but maintain that §1322(b)(2) has two distinct requirements: (1) the security interest must be in real property and (2) the real property must be in the debtor's principal residence". *Bradsher*, 427 B.R at 389, quoting *In re Ennis*, 558 F.3d 343 (4th Cir. 2009).  Including "escrow funds" as "incidental property" and including "incidental property" in the definition of "debtor's principal residence" merely brings "escrow funds" under the definition of "debtor's principal residence" under the second requirement but says nothing as to the first requirement as to whether escrow funds are real property. That inquiry is made only by looking to state law.  The *Bradsher* court concluded that the particular deed of trust at issue gave the debtor enforceable rights in the escrow funds and that nothing in the escrow provisions purported to "engraft the escrow account onto the land so as to convert the escrow account into a tenement or hereditament that would be transferred to the grantee of the land". *Id* at 391.  As such, the court concluded that the escrow funds were not "real property" and thus the lender's secured claim was not protected from bifurcation under §1322(b)(2). *Id*.

The Court is well aware that the escrow provisions considered by the *Bradsher* court are similar, if not identical, to the escrow provisions contained in the mortgage here.  However, *Bradsher* was decided interpreting North Carolina law and this Court is not bound by its result.  The Debtors cite no cases or authority for the proposition that

---

² The Debtors submitted four cases in support of their position, two of which were the *Bradsher* and the *Murray* cases.  The Debtors also cited *In re Hughes*, 333 B.R. 360 (Bankr. M.D.N.C. 2005) and *Ennis v. Green Tree Servicing, LLC (In re Ennis)*, 558 F.3d 343 (4th Cir. 2009).  *Hughes* involved escrow funds, but the debtor there filed her bankruptcy case before the effective date of BAPCPA and therefore the BAPCPA provisions did not apply.  *Ennis* involved a mobile home, not escrow funds.

escrow accounts that are required under the terms of a mortgage to hold taxes and insurance payments are so far removed from subject real estate to constitute "personal property" under Indiana law.  Even if they were, and even though property interests normally are defined by state law, state laws may be preeempted if they conflict with bankruptcy law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Lunger*, 370 B.R. 649, 651 (Bankr. M. D. Pa. 2007). Indeed, "the question of whether inclusion of an item of collateral is sufficient to deny a mortgagee the protection of §1322(b)(2) is a matter of federal bankruptcy law. *PNC Mortgage v. Dicks*, 199 B.R. 674, 681 (N. D. Ind. 1996).   Prior to the BAPCPA amendments, at least one Indiana court found that a security interest in additional collateral such as rents, issues, profits or escrow funds did not destroy the §1322(b)(2) character of the claim because they were merely an enhancement that was a component part of the real property and was of little or no independent value. *PNC Mortgage*, 199 B.R. at 682, (adopting the test set forth in *In re French*, 174 B.R. 1, 7 (Bankr. D. Mass. 1994); See also, *In re Rosen,* 208 B.R. 345, 353-354 (D. N. J. 1997) (escrow which held property tax funds was not separate, additional collateral because l"[t]he payment of taxes are simply part of the ownership interest attendant in title to property.."); *In re Rodriguez*, 218 B.R. 764, 777 (Bankr. E. D. Pa. 1998) (escrow account served the "obvious purpose" of protecting and preserving the value of lender's mortgage on the property, and thus lender did not forfeit §1322(b)(2) protection by taking a security interest in it); *In re Ferandos*, 402 F.3d 147, 156 (3rd Cir. 2005)(court determined that no security interest was created because, under New Jersey law, mortgagor retained no interest in funds once they were

escrowed, but added that "escrow funds are simply not akin to property whose value is applied by mortgagees in the event of default to pay down the outstanding debt. Rather funds for taxes and insurance...placed in escrow, exist precisely for the purpose of paying said taxes and insurance - a cost incurred by the debtor in connection with the ownership of the real property.").

Although the *PNC Mortgage* case decided by the United States District Court for the Northern District of Indiana is a pre-BAPCPA case, the Court adopts its reasoning. The escrow here was established solely for the purpose of sequestering property taxes and insurance premiums. It served as a convenience afforded the Debtors so that they did not have to pay said sums in one lump sum directly to the country treasurer and insurer. More importantly, it protected Flagstar's interest in the Residence by assuring it that funds for taxes and insurance would be available. The escrow account was no more than an enhancement that was a component part of the real property and was of little or no independent value. Assuming arguendo that a security interest in the Escrow Funds was created in favor of Flagstar, the Debtors could not have taken those Escrow Funds and pledged them to another creditor to secure another debt.

Section 1322(b)(2) was enacted to protect lenders whose only security is a security interest in the debtor's principal residence and not to protect lenders who take additional collateral of cars, boats or other collateral unrelated to the debtor's principal residence. See, *In re Garza* 2012 WL 692411 (Bkrtcy. S. D. Ind.)(lender with security interest in debtor's principal residence and "share accounts" lost §1322(b)(2) protections because the share accounts were "something totally unrelated to the debtor's residence"). Pre-BAPCPA law in Indiana interpreted §1322(b)(2) to protect

7

lenders who in addition took collateral in rents, issues, profits and escrow funds as they were components of real property that was the debtor's principal residence.  The BAPCPA amendments clarify §1322(b)(2) to include these types of collateral in the definition of "debtor's principal residence". By so doing, Congress "has effectively broadened the definition of real property for the purposes of implementing §1322(b)(2)". *Lunger*, 370 B.R. at 651.

The legislative history behind §1322(b)(2) "indicates that the statute was designed to protect and promote 'the increased production homes and to encourage private individual ownership of homes as a traditional and important value in American life' ". *In re Eastwood*, 192 B.R. 96, 100 (Bankr. D. N. J. 1996) (citations omitted). Congress presumably knew when it enacted §1322(b)(2) that a common and widespread practice within the mortgage industry was to require mortgagors to pay sums for taxes and insurance into escrow with their monthly payment of principal and interest and to take the escrow funds as security.  It is unlikely that Congress would have intended for the protections of §1322(b)(2) to be forfeited by adhering to a practice that was so commonplace in the industry. If such a practice led to forfeiture, the provisions of §1322(b)(2) would be eviscerated.  Accordingly the Court concludes that Flagstar's security interest in the Escrow Funds does not take it out of the provisions of §1322(b)(2) and that the Debtors' plan as it currently stands impermissibly crams down Flagstar's secured claim.

Accordingly, the Court SUSTAINS Flagstar's objection to confirmation and ORDERS the Debtors to file an amended chapter 13 plan consistent with the terms of this order within 21 days from the date of this order.

**# # #**

Distribution:

John McManus, Attorney for the Debtors
Christina Bruno, Attorney for Flagstar
Case Trustee